IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TERESA WINFUL, ) | |
| ) | No. 2:13-cv-02150-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| THE MEDICAL UNIVERSITY OF ) | |
| SOUTH CAROLINA; GEORGE ) | |
| OHLANDT; and CECILE KAMATH, in ) | |
| Their official capacities, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

      This matter comes before the court on United States Magistrate Judge Mary Gordon Baker's Report and Recommendation ("R&R") that this court grant in part and deny in part defendants The Medical University of South Carolina ("MUSC"), George Ohlandt ("Ohlandt"), and Cecile Kamath's ("Kamath") (collectively "defendants") summary judgment motion. Specifically, the magistrate judge recommends that this court grant defendants' summary judgment motion as to plaintiff Teresa Winful's ("Winful") Title VII claims for race and gender discrimination and deny defendants' motion for summary judgment as to Winful's retaliation claim. For the reasons set for the below, the court adopts the R&R in part and rejects the R&R in part and grants summary judgment as to all of Winful's claims.

## I.  BACKGROUND

      MUSC hired Winful, an African-American female, in December 2006 as an Information Resources Consultant I in the Office of Financial Aid. Compl. ¶ 9. Winful was hired by her then supervisor, Pearl Givens ("Givens"), and her duties included

1

general information technology and computer related tasks. Defs.' Mot. Ex. 18, Ohlandt's Depo. 19:19–20:19. At that time, Winful began working with William Vandiver ("Vandiver"), a white male, so that she could take over his job responsibilities when he retired. Defs.' Mot. Ex. 17, Winful Depo. 62:22–63:1.

MUSC hired defendant Ohlandt as the Executive Director of Enrollment Management in 2008. Ohlandt Depo. 9–15. Ohlandt previously served on the interview committee that recommended MUSC hire Winful in 2006, along with Vandiver and Givens. Id. at 29:15–30:15. In August 2008, one month after Ohlandt began his new position, Givens resigned, and Ohlandt became Winful's supervisor. In 2009, MUSC hired defendant Kamath as Director of Financial Aid. Kamath became Winful's direct supervisor and was supervised by Ohlandt. Dr. Darlene Shaw ("Shaw") was and is the Associate Provost for Educational Affairs and Student Life. Id. at 25:1–28:19. Shaw supervised the Office of Financial Aid at all times relevant to this case and directly supervised Ohlandt.

On February 18, 2011, Winful submitted her Employment Inquiry Questionnaire to the South Carolina Human Affairs Commission ("SCHAC") and on May 9, 2011, filed her Charge of Discrimination ("Charge") with the SCHAC. Defs.' Mot. Ex. 3; Ex. 4. SCHAC issued its Dismissal and Right to Sue letter on April 24, 2013. Def.'s Mot. Ex. 16. The letter sent to Winful enclosing the Right to Sue letter was dated May 1, 2013. Id.

Winful alleges that since 2008, defendants have subjected her to disparate treatment compared to her similarly situated white and Asian male counterparts by denying her promotions, raises, and other financial benefits in violation of Title VII.

2

Compl. ¶ 19. She also alleges that defendants subjected her to "disparate and worse working conditions and more difficult schedules than" similarly situated white and/or Asian male counterparts. Id. Winful further alleges that defendants retaliated against her for making discrimination complaints. Id. ¶ 36. As a result, Winful alleges that she has suffered a loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering. Id. ¶ 20. Winful seeks an award of actual and punitive damages.

Winful filed the present action against MUSC, Ohlandt, and Kamath on August 8, 2013, bringing the following claims: (1) race discrimination in violation of Title VII; (2) gender discrimination in violation of Title VII; (3) age discrimination under the Americans with Disabilities Act ("ADEA"); (4) discrimination pursuant to 42 U.S.C. § 1983; (5) civil conspiracy pursuant to 42 U.S.C. § 1985; and (6) retaliation in violation of Title VII. Winful filed a stipulation of dismissal on July 9, 2014, voluntarily dismissing her third, fourth, and fifth causes of action under the ADEA, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 respectively. Therefore, Winful's only remaining causes of action are her first, second, and sixth causes of action for race discrimination, gender discrimination, and retaliation in violation of Title VII.

Defendants filed a motion for summary judgment on September 30, 2014. Winful filed a response in opposition to defendants' motion on November 21, 2014. On December 18, 2014, defendants filed a reply. The magistrate judge issued an R&R on August 5, 2015. Winful and the defendants filed timely objections to the R&R on August 24, 2015. Defendants filed a response to Winful's objections on September 11, 2015.

The motion for summary judgment has been fully briefed and is now ripe for the court's review.

## II.  STANDARDS

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court may adopt the portions of the R&R to which the plaintiff did not object, as a party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  Thomas, 474 U.S. at 149–50.  This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration.  28 U.S.C. § 636(b)(1).

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. Id. at 255.

### III. DISCUSSION

Winful's claims center around the following five complaints of actions allegedly taken by defendants because of her race, gender, and in retaliation for her opposition to MUSC's alleged unlawful employment practices: (1) defendants denied Winful a raise; (2) defendants demoted Winful on or about August 31, 2010; (3) defendants failed to promote Winful in December 2010; (4) defendants involuntary transferred Winful to a new position in a new department on April 25, 2013; and (5) defendants engaged in other various forms of disparate treatment.[1]

#### A.      Denial of Raise – Discrimination and Retaliation

Winful alleges that Givens promised her a raise in 2007 but that Ohlandt refused to honor Givens's promise in 2008 because of budgetary restrictions. The magistrate judge found Winful procedurally barred from pursuing her denial of raise claim because she failed to include the claim in her Charge with the SCHAC. R&R 13; Defs.' Mot. for Summ. J., Ex. 7. Winful did not object to the magistrate judge's recommendation.

---

[1]      Specifically, Winful alleges that defendants denied her requests for: (1) sick leave, (2) a more flexible work schedule, (3) a change to her performance review, and (4) the opportunity to attend training conferences. Additionally, Winful alleges that MUSC "bashed" her in front of her co-workers. Defs.' Mot. Ex. 17, Winful Depo. 118–144. The magistrate judge found that none of her allegations constituted and adverse employment action. R&R 37. Winful did not object to the magistrate judge's recommendation. After reviewing the record for clear error and finding none, the court adopts the R&R as it pertains to Winful's discrimination and retaliation claims relating to her various claims of disparate treatment.

An individual alleging discrimination under Title VII must first file an administrative charge with the EEOC. The scope of the individual's claims are then limited by the date on which the charge was filed and the contents of the charge. See Dennis v. Cty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) ("Where, as here, the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."). Winful failed to include her denial of raise claim in her charge. Therefore, the magistrate judge properly determined that Winful is procedurally barred from pursuing the claim in this action.

### B.     Demotion – Discrimination and Retaliation

In her first and second causes of action, Winful alleges that on August 31, 2010, defendants demoted her because of her race and gender and in retaliation for her prior complaints. The magistrate judge found that Winful failed to provide sufficient evidence that defendants unlawfully discriminated or retaliated against her because of her gender or race by changing her job duties and failed to establish a prima facie case of race or gender discrimination. R&R 13–24. Winful did not object to this portion of the R&R. After reviewing the record for clear error and finding none, the court adopts the R&R as it pertains to Winful's discrimination and retaliation claims relating to her August 31, 2010 change in job duties.

### C.     Failure to Promote – Discrimination

Winful alleges that defendants failed to promote her to Information Resources Consultant II in November 2010 because of her race and gender. The magistrate judge recommended that the court find that Winful failed to establish sufficient direct or

circumstantial evidence to show discriminatory animus or satisfy the burden-shifting framework of McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973). R&R 25–28. Because Winful did not object to this portion of the R&R, the court, after a review of the record for clear error and finding none, adopts the R&R and grants defendants' summary judgment motion as it relates to Winful's discrimination claim for failure to promote.

### D.     Failure to Promote – Retaliation

Winful alleges that MUSC retaliated against her by failing to promote her to Information Resources Consultant II in November 2010 in retaliation for her prior complaints. The magistrate judge found that Winful failed to establish a prima facie case of retaliation because she could not prove a causal connection and/or "but-for" causation. Winful objected to this portion of the R&R, arguing that the magistrate judge erred "in finding that [she] failed to establish a prima facie case of retaliation in that she did not present sufficient evidence demonstrating the elements of a causal connection and 'but-for' causation as it relates to MUSC's failure to promote her." Pl.'s Objections 4. The court finds that the magistrate judge properly analyzed Winful's claim and agrees that Winful failed to establish causation.

Title VII and the ADEA both make it unlawful for an employer to discriminate against any employee or applicant because such individual has opposed a practice made unlawful by either law, or because such individual "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under either law. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). A plaintiff lacking direct evidence of retaliation may utilize the McDonnell Douglas framework to prove a claim of retaliation. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). Under the McDonnell Douglas

framework, a plaintiff must first establish a prima facie case of retaliation, which requires a showing that: (1) the plaintiff engaged in a protected activity, (2) the defendant acted adversely against her, and (3) the protected activity was causally connected to the adverse action. Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). A plaintiff alleging retaliation "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. at 2533.

Winful cannot establish that but-for her prior complaints, defendants would have hired her for the Information Resources Consultant II position. Winful alleges that she began making complaints about discriminatory treatment in 2008 and continued making complaints until MUSC failed to promote her in 2010. In late 2010, Winful applied for a new position as Information Resource Consultant II created in the Office of Financial Aid. Pl.'s Resp. 4. Out of forty-five applicants, Winful was one of five people selected for interviews. Ohlandt, Kamath, and Wendy Littlejohn ("Littlejohn"), MUSC's Executive Director of the Administrative Division of Education and Student Life, were all on the interview committee and were aware of Winful's prior complaints of disparate treatment. Id. The fourth committee member, Mark Allen ("Allen")—MUSC's Team Leader of Research and Academic Information Systems—had no prior knowledge of Winful's complaints. Def.'s Mot. Ex. 8, Allen Aff. ¶ 5.

The committee scored each of the five applicants, and Winful received a score of nineteen, the lowest score by far. Pl.'s Resp. 4. Alston, an applicant who tied for the highest score of forty-two, was another African-American female. Id. Although she was recommended for hire by the committee, Shaw did not offer her the position because Alston only had an associate's degree. Id. The applicant who received the second highest score of a thirty-nine, McKee, was a white female. Id. Shaw offered McKee the position; however, she declined the offer. Id. Shaw offered the job to the other applicant who tied for the highest score, a white male named Evans Jenkins ("Jenkins"), who accepted the offer. Ohlandt's Depo. 70–71; Pl.'s Resp. Ex. 6.

Winful argues that she "has presented sufficient evidence to raise a genuine dispute as to a material fact regarding the retaliatory animus of the majority members of the interviewing committee as the 'but-for' causation for [Winful] being denied the opportunity for promotion." Pl.'s Objections 4. Winful specifically argues that she has created a genuine dispute by demonstrating (1) that the disparity between the interview scores suggest that the lower scores on the second subjective portion of the interview process were the result of bias and (2) that the only instance in which defendants perceived Winful's performance as unsatisfactory was in the context of a promotion. Id. at 4–5.

Winful first argues that defendants have failed to establish the Winful also received lower scores on the examination portion of the interview process. The only evidence relating to the candidates' scores on the examination portion of the interview is an email from Shaw written shortly after the committee conducted the interviews. Pl.'s Objections Ex. 1. Shaw explains that Alston, the highest scorer on the interview portion

9

and the committee's first choice for the job, initially scored lower on the examination portion, but that her scores improved after she was given notice of the skills test prior to the interview.  Id.  Winful asserts that this email creates a genuine dispute because it demonstrates that she performed better than Alston, the preferred candidate, on the initial examination.  Pl.'s Objections 6.

However, the email does not demonstrate that Winful performed better than Alston on the examination portion, but only that Alston's scores improved.  Further, even if Winful had scored higher on the examination portion of the exam, there is insufficient evidence to establish a causal connection.  For example, Jenkins scored higher than McKee, a white female who was offered the job before Jenkins.  Further, Winful's scores, from the interview, including Allen's scores, were considerably lower than the other candidates' scores.  Allen had no knowledge of Winful's prior complaints and gave Winful the exact same score as two of the interviewers and was within one point of the other interviewer's score.  Pl.'s Resp. Ex. 6; Defs.' Mot. Ex. 8, Allen Aff. ¶ 5.  Further, in his assessment of her interview, Allen wrote that Winful "did not provide any specific examples of technical abilities in the interview," a review that is consistent with the other interviewers who did have knowledge of her complaints.  Def.'s Mot. Ex. 9, 4 ("Unnecessarily evasive in answering questions about what she knows or is capable of, even with encouragement . . . Could not remember details or skills from prior employment.").  The record shows that defendants did not offer Winful the job because she received a significantly lower scores on the interview than the other candidates and was therefore the least qualified.

Winful next argues that defendants' "inconsistent statements and evaluations concerning [her] performance create a genuine issue of material fact as to the interview committee's retaliatory bias." Pl.'s Objections 7. Winful argues that despite a "substantially exceeding expectations" score on the most recent performance review prior to the interview, she received only negative comments during her interview and very low scores. Winful contends that this disparity creates a genuine issue of material fact. The court disagrees. The quality of Winful's performance in her job as Information Resources Consultant I does not create a genuine dispute of material fact as to whether she was the most qualified candidate for the Information Resources Consultant II position. In Winful's performance reviews, unlike in the interview process, defendants did not rate her skills and abilities as compared to other people. Winful's positive job performance reviews and the fact that others were more qualified for the job are not mutually exclusive.

There is no evidence that but for Winful's prior complaints, she would have received the promotion; rather, the record establishes that the committee did not recommend Winful for the promotion because she scored the lowest of all the candidates. Because Winful failed to provide sufficient evidence of a causal connection or 'but-for' causation between Winful's prior complaints and defendants' failure to promote her, defendants are entitled to summary judgment.

### E.     Transfer – Discrimination

Winful alleges that MUSC discriminated against her because of her race and gender by transferring her to a new position and a new department outside of the Office of Financial Aid on April 25, 2015. The magistrate judge recommended that the court

find that Winful failed to provide sufficient evidence to establish a discrimination claim relating to her transfer. The court agrees with the magistrate judge's recommendation. Further, because Winful did not object to this portion of the R&R, the court, after reviewing the record for clear error and finding none, grants defendants' motion for summary judgment as it pertains to Winful's claim for discrimination relating to her transfer.

### F.    Transfer – Retaliation

The anti-retaliation provision of the FLSA is section 215(a)(3) and makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). A plaintiff asserting a retaliation claim has two methods by which she can establish her case. First, "[a] plaintiff may utilize the 'mixed-motive' approach by presenting 'direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision.'" Robinson v. Affinia Grp., Inc., 815 F. Supp. 2d 935, 938 (W.D.N.C. 2011) (quoting Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005)). "Alternatively, a plaintiff may 'proceed under [the McDonnell Douglas] "pretext" framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.'" Diamond, 416 F.3d at 318 (alteration in original) (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). Regardless of whether a plaintiff

utilizes the mixed-method approach or the McDonnell Douglas framework in proving a Title VII action, "the existence of some adverse employment action is required." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) ("The statute's wording makes clear that Congress did not want the specter of liability to hang over every personnel decision.").

After Winful did not receive the promotion to Information Resources Consultant II, Winful wrote a letter to MUSC's manager of human resources. In the letter dated December 31, 2010, Winful outlined her allegations of "retaliation, harassment, and racial discrimination." Pl.'s Resp. Ex. 12. Winful filed her Employment Initial Inquiry Questionnaire with the SCHAC on February 18, 2011. Def.'s Mot. Ex. 3. Winful filed her Charge with the SCHAC on May 9, 2011. Pl.'s Resp. Ex. 7. Winful continued to complain about discrimination to her supervisors at MUSC for the next couple of years. In January 2012, Kamath wrote Winful a letter responding to her "emails from the past few months" regarding her concerns about "having multiple priorities and some duties that are not IT in nature." Id. at Ex. 13. Kamath tried to adjust Winful's duties accordingly. Id.

In May 2012, MUSC offered Winful a lateral transfer to a newly created position in a different department with no increase in pay. Def.'s Mot. Ex. 10. Winful rejected the offer on May 14, 2012, stating that "[g]iven the quality and quantity of work that I have provided the Financial Aid office with over the past five years, [I do] not believe th[e] offer was adequate." Id. MUSC made the offer a second time, but with a 5% pay increase. Winful also rejected the second offer. Defs.' Mot. Ex. 19, Shaw Depo. 40:4–

42:25. MUSC never offered the position to anyone else, nor did MUSC ever hire someone to fill the newly created position. Id. at 63:4–16.

On September 10, 2012, Ohlandt, the supervisor who replaced Kamath, gave Winful the opportunity to draft her own job description and responsibilities. Ohlandt testified that Winful "expressed so many concerns over so long a period of time," that he was desperate to find something she'd be content with." Def.'s Mot. Ex. 6; Ohlandt Depo. 91–93. Winful declined the opportunity by letter dated September 17, 2012, stating that she could "easily see that [her] talents [were] being greatly minimized." Id. Ex. E.

On October 11, 2012 and November 1, 2012, Winful wrote letters to Shaw expressing complaints of management problems and "unfair and unequal practices, retaliation measures and attempts to get rid of African American employees in the Financial Aid office." Pl.'s Resp. Ex. 10. By February 2013, MUSC was planning to transfer Winful out of the Office of Financial Aid. Shaw emailed a draft transfer letter to Wallace Bonaparte ("Bonaparte"), head of MUSC's EEOC unit, and other MUSC staff members seeking their input. Pl.'s Resp. Ex. 16, 2; Def.'s Mot. Ex. 19, Shaw Depo. 51:8–55:21. MUSC planned to transfer Winful to the Instructional Technology and Faculty Resources department under Dr. Mary Mauldin, but her job title would still be Information Resources Consultant I. Pl.'s Resp. Ex. 16, 3. Bonaparte responded to Shaw's email, approving the letter and providing advice on how to conduct the meeting notifying Winful of the transfer. Bonaparte recommended that Shaw not bring up Winful's prior complaints but express "the organization's need for [the transfer] and how it would benefit [Winful]." Pl.'s Resp. Ex. 16, 5. Shaw sent a follow-up email to

Bonaparte and others on March 20, 2013 stating: "Just to let you know that I have not proceeded with the transfer, awaiting feedback from [Bonaparte] about new info from SCHAC about [Winful's] witnesses." Id. at Ex. 18, 2.

On April 22, 2013, Winful met with Shaw and Dr. Mauldin, her new supervisor. During their meeting, Shaw gave Winful a copy of a letter memorializing Winful's transfer to a new position in a new department outside of financial aid. Pl.'s Resp. Ex. 15. Winful's transfer became effective on April 25, 2013. The SCHAC dismissed Winful's Charge on April 24, 2013, and Winful received notice of the dismissal and her Right to Sue letter on May 1, 2013, approximately 23 months after Winful filed the Charge and six days after her transfer became effective. Pl.'s Resp. Ex. 14, SCHAC Notice.

Winful alleges that MUSC transferred her to a different position in a different department on April 25, 2015 in retaliation for her prior complaints. The magistrate judge recommended that the court deny MUSC's summary judgment motion as it pertains to Winful's retaliation claim relating to her transfer because Winful has both provided direct evidence of retaliation and has established a prima facie case of retaliation. R&R 35. MUSC objects to this portion of the R&R, arguing that the magistrate judge erred in finding that: (1) Winful provided direct evidence of retaliation; (2) Winful established a prima facie case of retaliation; (3) Winful provided sufficient evidence of pretext to refute MUSC's legitimate nonretaliatory reason for Winful's transfer; and (4) Winful presented sufficient evidence of "but-for" causation. Defs.' Objections 1–2.

15

The court will first address whether Winful established an adverse employment action as required under both the mixed-method theory and the McDonnell Douglas framework. See James, 368 F.3d at 375 (stating that regardless of whether a plaintiff utilizes the mixed-method approach or the McDonnell Douglas framework in proving a Title VII action, "the existence of some adverse employment action is required").[2]

### i.   Adverse Employment Action

The Fourth Circuit "has set forth clearly what constitutes an adverse employment action." James, 368 F.3d at 375. An adverse employment action is a discriminatory act which "adversely affect[s] 'the terms, conditions, or benefits' of the plaintiff's employment." Id. (quoting Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001)). "Conduct short of 'ultimate employment decisions' can constitute adverse employment action." Id. (quoting Von Gunten, 243 F.3d at 865). A plaintiff asserting a retaliation claim under Title VII "must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Whether an action "is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the

---

[2] It is clear that defendants Ohlandt and Kamath are entitled to summary judgment on Winful's claim for retaliation for the April 25, 2013 transfer. None of Winful's allegations relating to the transfer indicate that Ohlandt or Kamath were involved with the transfer decision. In fact, Kamath was no longer employed with MUSC. Winful Depo. 163:12–14. Therefore, the court finds that there is no genuine issue of material fact as to whether Kamath and Ohlandt retaliated against Winful by transferring her to a different department.

circumstances.'" Burlington, 548 U.S. at 71 (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998)).

The mere fact that a new job assignment is less appealing to the employee does not constitute adverse employment action. James, 368 F.3d at 375 (citing Von Gunten, 243 F.3d at 868). "A 'reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect.'" Id. (quoting Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999)). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id. (quoting Boone, 178 F.3d at 256–57). A "'lateral transfer—that is, a transfer involving no diminution in pay and benefits—may qualify as a materially adverse employment action if it result[s] in materially adverse consequences affecting the terms, conditions, or privileges of the plaintiff's employment.'" Cole v. Boeing Co., 75 F. Supp. 3d 70, 81 (D.D.C. 2014) (quoting Geleta v. Gray, 645 F.3d 408, 411 (D.C. Cir. 2011)). A plaintiff's "subjective preference for a different position cannot make her transfer to [a different] department a materially adverse action." Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 485 (5th Cir. 2008). While courts have found that a lateral transfer not affecting title, pay, or benefits was material adverse under circumstances in which the job duties changed, see Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 209 (2d Cir. 2006) (finding adverse employment action when a lateral transfer resulted in no change in job title, pay, or benefits but no longer held the same duties and responsibilities after the transfer), "reassignment can only form the basis

17

of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." Boone, 178 F.3d at 256.

Defendants argue that Winful did not suffer an adverse employment action because she retained her same job title, continued to receive the same pay, benefits, and performance raises and has the same opportunities for advancement. Winful claims that as a result of the transfer, she is "at the end of [her] band level . . . [is] starting a new department, which means [she is] learning new things, which also means [she] is at the bottom of the totem pole . . . so it's going to take longer for [her] to ride to the top" in the new department. Defs.' Mot. Ex. 17, Winful Depo. 164:21–25.

There is no evidence in the record to support Winful's claims that she is "at the bottom of the totem pole" or that it would be harder for her to get a promotion. Prior to her transfer, Winful applied to up to nine different positions in the Office of Financial Aid and other departments at MUSC, but after her transfer, she never applied for any other jobs. Defs.' Mot. Ex. 15. Although Winful claims that she was at the bottom of the totem pole after her transfer, she possessed the same "band level." Seniority within a department does not determine eligibility for promotions. Winful Depo. 92-110 (discussing that MUSC offered Evans Jenkins, who had no experience in the Financial Aid Department, the promotion to Information Resources Consultant II, even though others had more experience and seniority in the Financial Aid department). In deciding a motion for summary judgment, "the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." Cole, 75 F. Supp. 3d at 81 ("[C]onclusory assertions that [a plaintiff] lost

18

opportunities to earn overtime pay [that are] unsupported by any evidence in the record [] cannot raise a genuine issue of material fact." (citing Dist. Intown Props. Ltd. P'ship v. D.C., 198 F.3d 874, 878 (D.C. Cir. 1999))); Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) (nonmovant must present specific facts that would enable a reasonable jury to find in its favor).

It is undisputed that Winful's transfer did not result in a change in job title, compensation, or benefits. Defs.' Mot. Ex. 17, Winful Depo. 162:18–164:25. In fact, since her transfer, Winful received a raise. Id. at 63:17–19. Further, when asked whether she likes her new position, she admits that although it is not what she wanted to do, "yes, I have to like it." Id. at 164:5–7. Winful admitted that she is free to apply to new positions in any department at MUSC and can be promoted at any time. Id. at 165:15–166:12. "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Boone, 178 F.3d at 256. There is no evidence that the transfer had "some significant detrimental effect" on Winful or that her transfer would be "materially adverse to a reasonable employee." Id. at 256–57. Therefore, Winful has failed to establish an adverse employment action to support her Title VII claim for retaliation.

Because Winful cannot establish that she suffered an adverse employment action, it is unnecessary to address defendants' other objections to the magistrate judge's R&R. Therefore, the court grants defendants' summary judgment motion as it pertains to Winful's retaliation claim relating to her transfer.

## IV.  CONCLUSION

For the reasons set forth above, the court **ADOPTS** in part and **REJECTS** in part the report and recommendation and **GRANTS** defendants' motion for summary judgment as to all of plaintiff's claims.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 28, 2015
Charleston, South Carolina**